# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 22-1698V

```
* * * * * * * * * * * * * * * * * * * * * * * *   *
                                                  *
                                                  *
MARY CAPRI,                                       *
                                                  *
               Petitioner,                        *   Filed: February 9, 2024
                                                  *
                                                  *
v.                                                *   Reissued for Public Availability:
                                                  *   March 5, 2024
SECRETARY OF HEALTH AND                           *
HUMAN SERVICES,                                   *
                                                  *
                                                  *   Special Master Katherine E. Oler
               Respondent.                        *
                                                  *
* * * * * * * * * * * * * * * * * * * * * * * *   *
```

Mary Capri, Deerfield, IL, *pro se*
Meghan Murphy, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION DISMISSING PETITION[1]

### I.    Procedural History

On November 15, 2022, Petitioner filed a Petition. ECF No. 1. Petitioner's claim was:

> Petitioner, Mary Capri, requests compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq. (2012), for a Table Injury of VACCINES creating Permanent Locked in Vaccines Creating an recurring Auto Immune Anaphylaxis and Guillain Barre Syndrome Side Effects, resulting from an influenza vaccination she received on the Following Dates:
>
> A)    November, 1 2007 TB Forced By Carswell FMC Dr. Order for Chest Xray-Denied
> B)    November, 1 2008 TB Forced By Carswell FMC Dr. Order for Chest Xray-Denied
> C)    November, 1 2009 TB Forced By Carswell FMC Dr. Order for Chest Xray-Denied
> D)    November, 1 2010 TB Forced By Carswell FMC Dr. Order for Chest Xray-Denied

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

ECF No. 1 at 1. With the Petition, Petitioner filed some medical records indicating she had MMR antibodies and what appear to be doctors' notes exempting her from vaccinations. Exs. 1-4, 5A, 5D. Petitioner filed MRI reports from 2019. Exs. 6A-6D. Petitioner also filed blood test results documenting high levels of AST, ALT, D-Dimer, and creatine kinase. Ex. 7. Lastly, Petitioner filed a document entitled "Research Footnotes" which is a compilation of some online research and personal opinion. ECF No. 1-14.

On November 29, 2022, I held a status conference with the parties to discuss Petitioner's claim. Minute Entry dated 11/29/2022. I asked Petitioner if she could specify which vaccines she was alleging as causal. *See* Scheduling Order dated 11/29/2022, ECF No. 11. Ms. Capri informed me that she was alleging her childhood rubella, mumps, and varicella vaccines (which she claimed to have received in 5th and 6th grade)[2] caused her to develop an autoimmune disorder which causes her to live in a state of anaphylaxis. *See id.* She added that she was forced to receive TB (tuberculosis) shots[3] while incarcerated in the BOP (Bureau of Prisons) and that caused her disease onset. *See id.* I instructed Petitioner that she must file certified records of the vaccinations she is alleging are causal and informed her that her medical records regarding her antibodies do not satisfy this requirement. *See id.* I granted Petitioner until January 30, 2023 to file said records.

On January 27, 2023, Petitioner contacted my chambers regarding her filings via the Court's *pro se* inbox; Petitioner had sent her filings to the wrong email address. *See* Informal Communication Remark on 1/27/2023. I granted Petitioner additional time, until February 27, 2023, to file certified vaccination records, as Petitioner had also indicated she was in the process of gathering her school vaccination records. *See* Scheduling Order dated 1/27/2023, ECF No. 12.

Petitioner emailed an Amended Petition and vaccination records to the Court's *pro se* inbox. On January 31, 2023, I issued an order directing the Clerk of Court to file Petitioner's Amended Petition and vaccination records as they were noted to be defective. ECF No. 13. Petitioner's Amended Petition again stated that her injury was "a Recurring Auto Immune Anaphylaxis and [Guillain] Barre Syndrome Side Effects, resulting from an influenza vaccination she received (Attached Hereto) on the Following Dates:" and listed the following vaccines:

- 12/6/1968 Varicella vaccine she received at Altgeld Elementary School
- 10/29/2015 TD vaccine she received at Central DuPage Hospital
- 10/1/2015 Tdap vaccine she received at Central DuPage Hospital
- 12/6/2017 Zoster vaccine she received at Advocate Healthcare Aurora
- 9/1/2022 Influenza vaccine she received at Northwestern Arlington Heights
- 1/4/2023 Hepatitis B vaccine she received at Rush Copley Aurora

---

[2] Petitioner's record filed on January 31, 2023, states that she received the varicella and MMR vaccines on December 6, 1968, when Petitioner was a one-year old. *See* ECF No. 15 at 1.

[3] TB tests are more commonly performed in the BOP. *See generally* Federal Bureau of Prisons, Management of Tuberculosis, https://www.bop.gov/resources/pdfs/TB_CPG.pdf (last accessed March 29, 2023); *see also* Federal Bureau of Prisons Clinical Guidance on Immunizations, https://www.bop.gov/resources/pdfs/immunization_201808.pdf (last accessed March 29, 2023) (not listing TB or BCG vaccination in the Vaccine Procedure Modules).

- 1/4/2023 COVID-19 vaccine she received at Rush Copley Aurora

ECF No. 14 at 1-4. She also included what she claimed were TB vaccines from her original Petition:

<u>UN-Authorized-BOP Forced Vaccines</u>:

A) November, 1 2007 TB Forced By Carswell FMC (Dr. Order for Alternative Chest Xray-Denied)
B) November, 1 2008 TB Forced By Carswell FMC (Dr. Order for Alternative Chest Xray-Denied)
C) November, 1 2009 TB Forced By Carswell FMC (Dr. Order for Alternative Chest Xray-Denied)
D) November, 1 2010 TB Forced By Carswell FMC (Dr. Order for Alternative Chest Xray-Denied)

ECF No. 14 at 5. Petitioner filed a printout of her I-CARE (Illinois Comprehensive Automated Immunization Registry Exchange) Illinois Department of Public Health Patient Immunization History Report in support of her Amended Petition. ECF No. 15.

On February 28, 2023, I issued another order directing Petitioner to file a status report listing which specific vaccination(s) she is alleging caused her injury and what she believes her injury to be. ECF No. 16. On March 28, 2023, Petitioner filed a status report that stated she was experiencing high blood pressure, sleepiness, low heartbeat rate, and arrhythmias. ECF No. 17. Petitioner did not state which vaccines she alleged as causal.

On March 31, 2023, I issued an order for Petitioner to file a "status report stating which vaccination or vaccines she is alleging harmed her in this case." ECF No. 18. Petitioner contacted my law clerk stating her March 28, 2023 update had addressed what I requested. *See* Informal Communication Remark dated 4/7/2023. My law clerk informed Petitioner she had not done so and requested that she submit another status report. *See id.*

On April 14, 2023, Petitioner filed another status report in which she detailed a number of symptoms she was experiencing. ECF No. 19. At the end of the document, Petitioner included a chart of vaccines with contraindications and precautions from immunize.org. ECF No. 19 at 9-11. She highlighted the DTaP/DT, Hepatitis B, influenza (both egg based, inactivated injectable and cell culture-bared inactivated injectable, but not recombinant injectable or live attenuated), MMR, poliovirus, Tdap/Td, and varicella vaccines. *See id.* Petitioner failed to include any medical records documenting she experienced the symptoms that she highlighted.

On May 5, 2023, I issued another order stating Petitioner had failed to comply with my previous order, and had failed to clarify which vaccine or vaccines harmed her. Scheduling Order dated 5/5/2023 at 1, ECF No. 21. I also noted that Petitioner had not yet paid the Court's filing fee and instructed Petitioner to either pay the Court's filing fee or file a motion to proceed *in forma pauperis*. *Id.* I ordered Respondent to file a status report articulating how he believed this case should proceed. *See id.*

3

On June 5, 2023, Respondent filed a status report noting that Petitioner's lack of identification of the allegedly causal vaccination(s) and specific description of injury was a threshold issue. Resp't's Status Rep. at 2, ECF No. 22. In the interest of judicial efficiency, Respondent recommended that I issue an order to show cause directing that Petitioner identify which vaccination or vaccinations she is alleging harmed her and which specific injuries she allegedly suffered due to those vaccinations. *Id.*

I scheduled a status conference for June 20, 2023. ECF No. 24. During the status conference, I spoke to Petitioner about the importance of certified medical records and how her claim was deficient despite her numerous filings. Scheduling Order dated 6/20/2023, ECF No. 25. Before I could finish conveying all my thoughts to Ms. Capri, she disconnected from the call. The order I issued on the same day summarized what I had discussed with Ms. Capri as well as my thoughts on this case. *See id.* I ordered Ms. Capri to: 1) identify which specific vaccine or vaccines have harmed her and identify her injury, and 2) file medical records, including three years of medical records prior to the allegedly causal vaccine(s), that are complete and unaltered, and preferably certified. *Id.* at 2. I set a deadline of August 21, 2023 for Petitioner to submit these filings. *Id.* I also granted Petitioner's motion to proceed *in forma pauperis*. *Id.* at 1.

After the status conference, Petitioner re-filed her April 14, 2023 status report (ECF No. 19), with some very slight modifications. ECF No. 26. Petitioner failed to provide any contemporaneous medical records documenting her symptoms and/or injuries related to the varicella, Tdap/TD, zoster, influenza, and Hepatitis B vaccinations she claims to have received. *See generally* ECF No. 26.

On July 10, 2023, Petitioner filed a new document listing the same vaccines as above and a broad array of symptoms. ECF No. 27. Petitioner also filed medical records of a hysterectomy she received in 2000, but no other medical records that document a post-vaccination reaction. ECF No. 28.

On August 22, 2023, I issued an order directing Petitioner to file any medical records she would like me to consider in evaluating her claim by September 21, 2023. Scheduling Order dated 8/22/2023, ECF No. 30.

On September 6, 2023, Petitioner filed a status report alleging she suffered a possible allergic reaction from peanuts consumed during the holiday season which Petitioner claimed she has "known from experience to Lock [her] spine." ECF No. 31 at 3. She claimed she could not walk and was swelling up. *Id.*

On the same day, Petitioner filed corresponding medical records of her emergency room visit on December 30, 2022, at Rush Copley Medical Center. ECF No. 32.

On October 24, 2023, I issued an Order to Show Cause as to why this case should not be dismissed. ECF No. 33. Many of the allegedly causal vaccinations that Petitioner has pled throughout her various pleadings are either outside the statute of limitations, not covered by the Vaccine Program, or both. *Id.* at 8-9. I informed Petitioner the only vaccines that she could continue her claim with were her September 1, 2022 influenza and January 4, 2023 Hepatitis B

vaccinations. *Id.* at 9. However, Petitioner had not yet provided a certified or unaltered vaccination record. Beyond that, Petitioner failed to file any medical records that purport to relate to a vaccine injury. Despite numerous opportunities to file relevant medical records, Petitioner has failed to do so. Petitioner was given a deadline of November 27, 2023 to file unaltered medical records in support of her claim otherwise this case would be dismissed. *Id.* at 9-10.

On November 22, 2023, Petitioner emailed my law clerk requesting additional time to file her medical records. *See* Informal Communication dated 11/27/2023. I granted Petitioner an additional 30 days, or until December 27, 2023, to file unaltered medical records. ECF No. 34.

On December 28, 2023, Petitioner filed a Motion for Interlocutory Review requesting that a judge or a different special master review the facts that I articulated in the Order to Show Cause. ECF No. 35.

On January 2, 2024, I admitted Court Exhibits 1001 and 1002, an updated I-CARE Vaccination Record and a separate document entitled "Vaccine Records Explanation." ECF No. 36.

On January 26, 2024, Respondent filed a response to Petitioner's Motion for Interlocutory Review, recommending that it be denied as no decision had been issued in this case and Petitioner's motion was premature. ECF No. 41. On February 1, 2024, Petitioner filed a reply. ECF No. 42.

On February 6, 2024, I denied Petitioner's Motion for Interlocutory Review. ECF No. 43. I concluded that because no final decision had been issued in this case, Petitioner's request was premature.

On February 8, 2024, in reviewing records pertaining to Petitioner's case, my law clerk discovered a document that Petitioner had tried to file with the clerk's office on June 1, 2023, but that she had sent to an incorrect email address. *See* Order dated February 8, 2024; ECF No. 44. Upon discovering the document had never been submitted, I admitted it as Court Exhibit 1003.

Because Petitioner has not filed any other substantive records, this matter is ripe for adjudication.

## II.    Petitioner's Medical History

Petitioner was born on December 6, 1967. *See, e.g.*, Court Exhibit 1001 at 1. Her medical records are summarized in chronological order below.

On February 21, 2000, Petitioner underwent a transvaginal hysterectomy. ECF No. 28 at 3-4. The operative report detailed the steps of the procedure, and noted there were no complications. *See id.* at 3-4.

A laboratory report dated January 16, 2009 for Petitioner's endomysial antibody[4] and gliadin antibody[5] levels revealed that Petitioner was negative of endomysial and gliadin antibodies. ECF No. 17 at 8. Handwritten arrows were added to the "equivocal" range, even though Petitioner's results were negative. *See id.*

A handwritten doctor's note for December 10, 2011, is largely illegible but the following can be discerned: "allergic reaction to…," "IgA deficiency," "Benadryl 50mg IM, Solu-Medrol 125mg IM, Albuterol one treatment…," and "or swelling doesn't…" ECF No. 1-8. This document has notations in different handwriting that read, "allergic reaction to "vaccines"," and "IgA Deficiency." *Id.*

Blood test results dated March 11, 2015, reveal that Petitioner is positive for rubella antibodies. ECF No. 1-6.

Blood test results dated March 13, 2015, reveal Petitioner is positive for varicella-zoster and mumps antibodies. ECF Nos. 1-5, 1-7.

Blood test results dated March 16, 2015, reveal Petitioner is positive for rubeola (measles) antibodies. ECF No. 1-4.

A doctor's note dated March 17, 2015 is difficult to read, but appears to say "Live vaccine is contraindication to Ms. Mary Capri. She suffers from absence of IgG and IgA." ECF No. 1-9 at 1.

A doctor's note dated March 24, 2015, is similarly difficult to read. The note appears to say, "Ms. Capri can not – attenuated flu vaccine. She – severe reaction." ECF No. 1-9 at 2.

On February 26, 2019, Petitioner was seen by nurse Laura Bailey, who noted Petitioner had a history of cyst removal and hysterectomy, and IgA deficiency. ECF No. 1-13 at 2. It is unclear what this appointment was for, but Petitioner's physical exam was unremarkable. *Id.*

On March 7, 2019, a lumbar spine MRI report was completed. ECF Nos. 1-10, 1-11. The report noted some hypertrophy at various levels of the spine. *See id.* A number of words are circled and underlined such as: osteophytes formation, mild spinal canal stenosis is demonstrated, disc desiccation, mild to moderate spinal canal stenosis is demonstrated, there is disc desiccation, disc protrusion, and associated annular tear. *See id.*

---

[4] Endomysial antibodies test is for "analysis of IgA-endomysial antibodies for the diagnosis of dermatitis herpetiformis and celiac disease." Mayo Clinic Laboratories, *Endomysial Antibodies, IgA, Serum*, https://www.mayocliniclabs.com/test-catalog/overview/9360 (last accessed on January 31, 2024).

[5] Gliadin antibodies test is for an "assessment of deaminated gliadin IgA antibodies for evaluating patients suspected of having celiac disease, including patients with compatible clinical symptoms, patients with atypical symptoms, and individuals at increased risk." Mayo Clinic Laboratories, *Gliadin (Deaminated) Antibody, IgA, Serum*, https://pediatric.testcatalog.org/show/DAGL (last accessed on January 31, 2024).

A cervical spine MRI report was completed on the same day. ECF No. 1-12, 1-13 at 1. Once again, the report was mostly unremarkable, however a number of terms were circled: such as unconvertebral spur formation, small osteophytes formation, lateral disc herniation, spinal canal stenosis is seen, lateral disc herniation seen, lateral disc protrusion. *See id.*

On June 20, 2019, Petitioner's blood panel report was completed. ECF No. 1-13 at 9. Her results were largely normal with the exception of high LDL cholesterol levels. *Id.* Handwriting appears at the bottom of the report that reads, "No Diabetes! Great!" *Id.*

On July 20, 2019, Petitioner's hepatic function panel results returned with high levels of AST and ALT. ECF No. 1-13 at 4.

On July 21, 2019, Petitioner's D-Dimer test result returned as high, with a value of 10,210 ng/ml FEU. ECF No. 1-13 at 3. The standard range is under 499 ng/ml FEU. *Id.* Her WBC or white blood cell count returned as 0, or normal. *Id.* at 7.

On July 22, 2019, Petitioner's CK levels returned as high. ECF No. 1-13 at 5.

On July 23, 2019, Petitioner's D-Dimer results were flagged as high once again but at 6,430 ng/ml FEU. ECF No. 1-13 at 8.

On December 30, 2022, Petitioner went to the emergency room at Rush Copley Medical Center. ECF No. 32. The medical record noted Petitioner's chief complaints were "back pain greater than 1 week" and "neck pain." *Id.* at 2. The history of present illness stated:

> [Petitioner] presents with acute exacerbation of chronic neck and low back pain over the last 4 days after bending. Feels like she strained her back after twisting/bending. No fall or blunt trauma. … Was last evaluated for her back several years ago, at which time she was told "I had fluid leaking in my spinal column"… Back pain is aggravated with movement and improved with rest.

*Id.* at 3. The past medical history noted that Petitioner had "low serum IgG1 and IgM levels." *Id.* The record then notes: "*it's a birth defect; I was born with low IGG*." *Id.* (emphasis in original). Petitioner underwent CTs that were "unremarkable" and had a normal neurological exam. *Id.* at 6. Petitioner's cervical and lumbar CTs showed "degenerative changes without acute fracture or subluxation… No red flag signs concerning for cauda equina or epidural abscess. Ambulatory with steady gait. Will discharge with close primary care follow-up." *Id.* There was no mention of peanut allergies or an anaphylactic reaction in her December 30, 2022 records. *See generally id.* The hospitalization also does not include any vaccinations or references to vaccinations.

On March 16, 2023, Petitioner underwent an echocardiogram. ECF No. 17 at 4. The ECG Report noted Petitioner had a "Normal sinus rhythm" and "Normal ECG." *Id.* Petitioner pointed out that her ventricular and atrial rates was 72 BPM. *Id.* at 3.

On June 1, 2023, RN Ronald Roxas signed a letter which states that Petitioner has been diagnosed with IgA and IgG deficiencies. The letter further states that "Patient was advised not to

have the following vaccines: Influenza, Td/Tdap, Shingles, Hepatitis B, COVID-19, MMR, Varicella." Court Exhibit 1003.

No further medical records have been filed.

### III.  Petitioner's Statements and Filings

Petitioner submitted numerous self-created filings regarding her health, symptoms, and a theory of causation. I summarize them below.

#### A.  Petition (ECF No. 1)

In the original Petition, Petitioner alleged that she suffered from "an recurring Auto Immune Anaphylaxis and Guillain Barre Syndrome Side Effects, resulting from an influenza vaccination she received on the Following Dates:"

| | |
|---|---|
| A) | November, 1 2007 TB Forced By Carswell FMC Dr. Order for Chest Xray-Denied |
| B) | November, 1 2008 TB Forced By Carswell FMC Dr. Order for Chest Xray-Denied |
| C) | November, 1 2009 TB Forced By Carswell FMC Dr. Order for Chest Xray-Denied |
| D) | November, 1 2010 TB Forced By Carswell FMC Dr. Order for Chest Xray-Denied |

Pet. at 1. No date of vaccination was provided for her alleged flu vaccination. Petitioner also stated she was born without IgG or IgA antibodies, thus vaccines would lock her immune system in a continuous self-recurring anaphylaxis. *Id.* Petitioner also stated that she was forcibly held down to receive TB vaccinations on November 1st of every year. *Id.* at 2. Petitioner stated she suffered from seizures, low hemoglobin, and low blood pressure. *Id.* at 2-3. Petitioner developed sensitivities to a number of products such as: soap, makeup, lotions, and hair products. *Id.* at 3. Petitioner states that "To date, 8 Years AFTER Carswell," she suffers permanently from a sensitive lifestyle. *Id.* Lastly, Petitioner requests that this case be expedited as she was homeless after leaving the BOP and was denied a "second chance of law" to be placed in housing, food, and a job. *See id.* at 4.

#### B.  Research Footnotes (ECF No. 1-14)

Petitioner claimed that her Gladian [sic] antibody levels were "low" and "BELOW Acceptability Range." ECF No. 1-14 at 1. Next, Petitioner cited to egg yolk or cell-based vaccines as contributory to a "lifetime war" in a person who has immunodeficiencies like herself. *Id.* at 2. She next claimed that the TB injections were cultured in egg yolk and no alternatives were given to her. *Id.* at 4. Petitioner claimed that while incarcerated, she was granted a special diet and only ate egg whites and no yellow yokes. *Id.* She claimed that she was rendered unconscious for an hour after TB injections and was weak and lethargic for months later. *Id.* at 5.

She described that the ongoing symptoms that she experiences from her TB injections are a freezer burn sensation on her arms, electric shock sensations when people touch her, "razor cold pain" when she goes outdoors, swelling in the mouth and tongue from "exposure [to] humans, germs, bacteria, dish and non organic food groups," and IgA deficiency which blocks calcium absorption leading to degenerative discs and pinched nerves. ECF No. 1-14 at 5.

8

Petitioner additionally claimed that her childhood vaccines (MMR and varicella) locked in a "LIFETIME war" which has decreased her antibodies. ECF No. 1-14 at 9.

Petitioner also states that B-cells produce beta cells which inhibits her ability to eat carbs. ECF No. 1-14 at 10.

### C. Amended Petition (ECF No. 14)

Petitioner filed an amended petition listing the following vaccines as causal: 12/6/1968 MMR vaccine, 12/6/1968 varicella vaccine, 10/19/2015 Td vaccine, 10/1/2015 Tdap vaccine, 12/6/2017 zoster vaccine, 9/1/2022 influenza vaccine, 1/4/2023 hepatitis B vaccine, 1/4/2023 Covid-19 vaccine, and November 1, 2007-2010 TB injections/tests. ECF No. 14 at 1-4. Under each vaccine, she listed a wide variety of symptoms including: thrombocytopenia, hematologic and solid tumors, chemotherapy, severe allergic reaction, encephalopathy, uncontrollable seizures, and arthus-type hypersensitivity. *Id.* at 1-4. Petitioner also included the November 1, 2007-2010 "TB vaccines" from her original petition, and how she was forcibly restrained to receive them and suffered greatly as a result. *Id.* at 5, 7. Petitioner further reiterated that she still had MMR and varicella antibodies from her childhood vaccines. *Id.* at 6.

### D. Status Report filed March 28, 2023 (ECF No. 17)

Petitioner filed a status report with symptoms she was experiencing, including tiredness, dizziness, and an inability to keep warm. ECF No. 17 at 2. She also complained of high blood pressure (146/90), and a slow heart rate of 72 BPM. *Id.* at 3-4. She argued that her slow heart rate (or arrythmia[6]) was a result of her IgA and IgG deficiency. *Id.* at 5.

She also reported that on "Friday the 17th [of March]", she felt extremely weak and cold, and could not breathe. ECF No. 17 at 6-7. She went to the doctor to get an EKG and was given a home heart monitor to track her heart rate for the next 30 days. *Id.* at 7.

Petitioner included her endomysial and gliadin antibody results and doctor's notes from December 10, 2011 and March 24, 2015. ECF No. 17 at 8-9. Lastly, Petitioner reiterated that people with IgG deficiencies cannot receive vaccines and each time she received one, she experienced terrible symptoms. *Id.* at 10.

### E. Status Report filed April 14, 2023 (ECF No. 19)

Petitioner argued that some people are born with normal to high IgA levels and some were born deficient. ECF No. 19 at 1. She further stated that "IgG and IgA does NOT ever increase to higher levels, Antibodies are… soldiers and all Antibodies are called into WAR with Foreign Invaders." *Id.* Antibodies are "lock and key" for the wall against foreign invaders. *Id.* at 2. In an

---

[6] Arrhythmia: 1. a disturbance in or loss of regular rhythm. 2. especially, any variation from the normal rhythm of the heartbeat; it may be an abnormality of either the rate, regularity, or site of impulse origin or the sequence of activation. The term encompasses abnormal regular and irregular rhythms as well as loss of rhythm. DORLAND'S, https://www.dorlandsonline.com/dorland/definition?id=4146

immunodeficient person, vaccines introduce antibodies to the body that occupy the antibody fighters into a "permanent lifetime Internal War with the LIVE VACCINES." *Id.* at 2.

Petitioner repeated that she was cold and could not stay awake. ECF No. 19 at 3. She would fall asleep while driving and pull over to nap but would experience a drowning sensation and drowsiness. *Id.* Petitioner was consuming Sugar Free Watermelon MONSTER Vitamin Drinks to work but was urinating more frequently. *Id.*

Petitioner repeated her theory that she was born with antibody deficiencies and could not fight the live vaccinations in her system. ECF No. 19 at 5. Whenever she encounters germs or bacteria, she has an anaphylactic reaction which includes histamine fluids rushing in her body and causing "sticky MASS buildup in the veins and arteries stopping proper osmotic pressure throughout the body." *Id.* at 6.

Petitioner next included a chart of "Adverse Reactions," "Damages," and "Warnings." ECF No. 19 at 7. Petitioner pleads for a new law that would force all hospital emergency rooms to perform blood panels so that IgA and IgG levels could be determined immediately. *Id.* at 8.

Lastly, Petitioner includes immunize.org's "Guide to Contraindication and Precautions to Commonly Used Vaccines for All Ages, and highlighted the following vaccines: DTaP, DT, Hepatitis B, influenza egg based inactivated injectable (IIV), influenza cell-culture based inactivated injectable (ccIIV), MMR, poliovirus inactivated (IPV), Tdap, Td, varicella, and zoster recombinant (RZV). ECF No. 19 at 9-11.

Petitioner also included her endomysial and gliadin antibody test results, her December 10, 2011 and March 24, 2015 doctor's notes, and first I-CARE report. ECF No. 19 at 12-15.

### F.  Amended Status Report filed June 20, 2023 (ECF No. 26)

This status report was largely the same as the previous status report but Petitioner added a "Vaccinations Received" column with varicella, Tdap/TD, Zoster Influenza, and Hepatitis B listed. ECF No. 26 at 7.

### G.  Status Report filed July 10, 2023 (ECF No. 27)

Petitioner titled this document "Vaccination Damages." ECF No. 27 at 1. Petitioner dedicated roughly one page to each of her alleged vaccines (varicella, DT, Zoster, Hepatitis B, Influenza, and MMR) and her "permanent damages." *See generally id.* Each "permanent damages" section was the same. *See generally id.* Petitioner repeated many of her prior statements: she was born with IgG/IgA deficiency, she could not touch or smell bacteria and would develop blisters when interacting with foreign substances. *Id.* at 1. Because of her vaccinations, she has "been alone for 16 years" and lives a "BUBBLE person life." *Id.* She attempted to have a "FRIEND" but could not touch him. *Id.* She asked him to leave but he refused so she sought a restraining order against him. *Id.* Whenever he sat near her, Petitioner claimed that her bladder would start bleeding "because of his bacterial exposure." *Id.*

Lastly, Petitioner stated that histamine fluid rushes "drys PASTY AND CHALKY within the system creating permanent internal blockages" and the blockages caused her slow heartbeat and tiredness. ECF No. 27 at 2. She repeated that she often has to pull over while driving and that she sleeps in public. *Id.*

### H.  Status Report filed September 6, 2023 (ECF No. 31)

Petitioner's next document was entitled, "Can anaphylaxis reactions in spine cause Cauda [equina]?" ECF No. 31 at 1. Petitioner further clarified the question to be "can anaphylactic fluid rush [cause] pinching and deterioration of the discs in the spine that would cause [cauda equina] spinal paralyzation?" ECF No. 31 at 1-2.

Petitioner recounted how she went out on December 30, 2022 to a restaurant hotel for the holidays. ECF No. 31 at 2. She stated that she was apprehensive because it was crowded, and it was winter virus season. *Id.* She was allergic to "gluten, carbs, peanuts, and wheat" and many holiday dishes include peanuts "which have been known from experience to Lock [Petitioner's] spine." *Id.* at 2-3. She stated that she felt "massive fluids rush in [her] Already Degenerative Spine due to RX No IgA/IgG which blocks Calcium absorption." *Id.* at 3. She also said she swelled up and could not feel her fingers, toes, or side of her legs. *Id.* She went to Rush Copley Hospital and recalled that the doctor noted "cauda equina" under "Decision Making and Plans." *Id.* at 4. She then claimed that after her 2000 hysterectomy she became legally paralyzed. *Id.* at 4-5. She claimed that she lost the ability to move after eating normal foods and lost sensation from the waist down. *Id.* at 5-6. Her paralysis was observed while she was incarcerated at FMC Carswell for "not testifying against her mother for tax fraud that occurred when Petitioner was 5-7 years old. *Id.* at 6. She believes that her incapacitation after "TB vaccinations" could be connected to cauda equina. *Id.* Petitioner noted that if cauda equina was untreated, it could lead to "permanent paralysis, impaired bladder and/or bowel control, loss of sexual sensation." *Id.* at 7-8. She believed that her paralysis in 1998 could be connected to cauda equina. *Id.* at 9. Petitioner hypothesized that anaphylaxis would trigger immediate, acute onset of cauda equina. *Id.* at 10.

Lastly, Petitioner stated, "I already Have Copy a Completed Petition in with All Medical Documentations." ECF No. 31 at 10.

### I.  Motion for Interlocutory Review (ECF No. 35)

The legal question of Petitioner's motion was handled in the Order Denying Petitioner's Motion for Interlocutory Review. ECF No. 43. Petitioner's other statements in this motion are summarized below.

Petitioner argued that her 1968 MMR and varicella vaccinations did occur in 1968 because she was enrolled in pre-kindergarten and vaccinations were mandatory; I had identified in the Order to Show Cause the inconsistency between her statement during the initial status conference and her first I-CARE record. ECF No. 35 at 12; *see also* ECF No. 33 at 1-2, fn. 1. To validate her receipt of the MMR and varicella vaccines, Petitioner submitted a printout of her Chicago Public School Historical Student Information Access page which shows Petitioner's name as Capria Gale, birth date as 10/22/1967, and that she was enrolled at Altgeld Elementary School on 9/6/1972,

when Petitioner was four years old. ECF No. 35 at 13. Petitioner stated that she did receive the vaccinations at Altgeld Elementary School because she was enrolled in "Altgeld Garden Early Learning Center" which is a daycare program provided for low-income families and accepts children ages 1 month to 6-years old, which Petitioner attended when she was one-year old. *Id.* at 6-7.

Petitioner alleged that there was fraud in her past and that her Social Security number and/or birth certificate has been altered by her adopted mother "Dorothy." ECF No. 35 at 8-14. She requests that the Court subpoena the "Solvency Group" and/or "Sovereign Group" to verify her name, date of birth, and social security number. *Id.* at 11.

Petitioner also argued that hospitals to do not provide certified medical records. ECF No. 35 at 14. Petitioner repeatedly stated that I have deemed many of her filings as "unsatisfactory." *Id.* at 14-15.

Petitioner listed a number of symptoms and conditions from which she suffers, including, acute cystitis (15), hematuria (15), large leukocyte esterase (16), arrythmia (20-21), anaphylaxis (20), and histamine fluid rushes (26). *See generally* ECF No. 35.

Petitioner argued that her "TB vaccines" claim should be considered despite the fact that they are not vaccinations. ECF No. 35 at 18. Petitioner cited to the Center for Disease Control "Tuberculin Skin Test Reaction" as proof that she was vaccinated for TB. *Id.* at 18-20. She urged the Court to accept the "TB immunizations" because she had suffered immense harm by receiving them such as "coma like effects and [she] could not move around for months." *Id.* at 18. Petitioner believed the TB vaccines were yearly entertainment for the nurses at the FMC Carswell prison. *Id.* at 25.

## IV.   Applicable Law

### A.   Petitioner's Burden

Under the Vaccine Act, a petitioner may prevail in one of two ways. First, a petitioner may demonstrate that she suffered a "Table" injury—i.e., an injury listed on the Vaccine Injury Table that occurred within the time period provided in the Table. § 11(c)(1)(C)(i). "In such a case, causation is presumed." *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006); *see* § 13(a)(1)(B). Second, where the alleged injury is not listed in the Vaccine Injury Table, a petitioner may demonstrate that she suffered an "off-Table" injury. § 11(c)(1)(C)(ii).

For both Table and non-Table claims, Vaccine Program petitioners bear a "preponderance of the evidence" burden of proof. Section 13(1)(a). That is, a petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1324 (Fed. Cir. 2010); *see also Snowbank Enter. v. United States*, 6 Cl. Ct. 476, 486 (1984) (mere conjecture or speculation is insufficient under a preponderance standard). Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873* (Fed. Cir. 1991). In particular, a petitioner must demonstrate that the vaccine was "not only [the] but-for cause of the injury but also a

substantial factor in bringing about the injury." *Moberly*, 592 F.3d at 1321 (quoting *Shyface v. Sec'y of Health & Hum. Servs.*, 165 F.3d 1344, 1352 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Hum. Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). A petitioner may not receive a Vaccine Program award based solely on his assertions; rather, the petition must be supported by either medical records of by the opinion of a competent physician. Section 13(a)(1).

In attempting to establish entitlement to a Vaccine Program award of compensation for a non-Table claim, a petitioner must satisfy all three of the elements established by the Federal Circuit in *Althen*. *Althen* requires that petitioner establish by preponderant evidence that the vaccinations he received caused her injury "by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Id.* at 1278.

Each of the *Althen* prongs requires a different showing. Under *Althen* prong one, petitioners must provide a "reputable medical theory," demonstrating that the vaccine received *can cause* the type of injury alleged. *Pafford*, 451 F.3d at 1355-56 (citations omitted). To satisfy this prong, a petitioner's theory must be based on a "sound and reliable medical or scientific explanation." *Knudsen v. Sec'y of Health & Hum. Servs.*, 35 F.3d 543, 548 (Fed. Cir. 1994). Such a theory must only be "legally probable, not medically or scientifically certain." *Id.* at 549.

Petitioners may satisfy the first *Althen* prong without resort to medical literature, epidemiological studies, demonstration of a specific mechanism, or a generally accepted medical theory. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1378-79 (Fed. Cir. 2009) (citing *Capizzano*, 440 F.3d at 1325-26). Special Masters, despite their expertise, are not empowered by statute to conclusively resolve what are complex scientific and medical questions, and thus scientific evidence offered to establish *Althen* prong one is viewed "not through the lens of the laboratorian, but instead from the vantage point of the Vaccine Act's preponderant evidence standard." *Id.* at 1380. Accordingly, special masters must take care not to increase the burden placed on petitioners in offering a scientific theory linking vaccine to injury. *Contreras v. Sec'y of Health & Hum. Servs.*, 121 Fed. Cl. 230, 245 (2015) ("[p]lausibility ... in many cases may be enough to satisfy *Althen* prong one" (emphasis in original)), *vacated on other grounds*, 844 F.3d 1363 (Fed. Cir. 2017). But this does not negate or reduce a petitioner's ultimate burden to establish her overall entitlement to damages by preponderant evidence. *W.C. v. Sec'y of Health & Hum. Servs.*, 704 F.3d 1352, 1356 (Fed. Cir. 2013) (citations omitted).

The second *Althen* prong requires proof of a logical sequence of cause and effect, usually supported by facts derived from a petitioner's medical records. *Althen*, 418 F.3d at 1278; *Andreu*, 569 F.3d at 1375-77; *Capizzano*, 440 F.3d at 1326 ("medical records and medical opinion testimony are favored in vaccine cases, as treating physicians are likely to be in the best position to determine whether a 'logical sequence of cause and effect show[s] that the vaccination was the reason for the injury'") (quoting *Althen*, 418 F.3d at 1280). Medical records are generally viewed as particularly trustworthy evidence, because they are created contemporaneously with the treatment of the patient. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

However, medical records and/or statements of a treating physician's views do not *per se* bind the special master to adopt the conclusions of such an individual, even if they must be considered and carefully evaluated. Section 13(b)(1) (providing that "[a]ny such diagnosis, conclusion, judgment, test result, report, or summary shall not be binding on the special master or court"); *Snyder v. Sec'y of Health & Hum. Servs.*, 88 Fed. Cl. 706, 746 n.67 (2009) ("there is nothing ... that mandates that the testimony of a treating physician is sacrosanct -- that it must be accepted in its entirety and cannot be rebutted"). As with expert testimony offered to establish a theory of causation, the opinions or diagnoses of treating physicians are only as trustworthy as the reasonableness of their suppositions or bases. The views of treating physicians should also be weighed against other, contrary evidence also present in the record -- including conflicting opinions among such individuals. *Hibbard v. Sec'y of Health & Hum. Servs.*, 100 Fed. Cl. 742, 749 (2011) (not arbitrary or capricious for special master to weigh competing treating physicians' conclusions against each other), *aff'd*, 698 F.3d 1355 (Fed. Cir. 2012); *Caves v. Sec'y of Health & Hum. Servs.*, No. 06-522V 2011 WL 1935813 at *17 (Fed. Cl. Spec. Mstr. Apr. 29, 2011), *mot. for review den'd*, 100 Fed. Cl. 344, 356 (2011), *aff'd without opinion*, 475 Fed. App'x 765 (Fed. Cir. 2012).

The third *Althen* prong requires establishing a "proximate temporal relationship" between the vaccination and the injury alleged. *Althen*, 418 F.3d at 1281. That term has been equated to the phrase "medically-acceptable temporal relationship." *Id.* A petitioner must offer "preponderant proof that the onset of symptoms occurred within a timeframe which, given the medical understanding of the disorder's etiology, it is medically acceptable to infer causation." *de Bazan v. Sec'y of Health & Hum. Servs.*, 539 F.3d 1347, 1352 (Fed. Cir. 2008). The explanation for what is a medically acceptable timeframe must also coincide with the theory of how the relevant vaccine can cause an injury (*Althen* prong one's requirement). *Id.* at 1352; *Shapiro v. Sec'y of Health & Hum. Servs.*, 101 Fed. Cl. 532, 542 (2011), *recons. denied after remand on other grounds*, 105 Fed. Cl. 353 (2012), *aff'd without op.*, 503 F. App'x 952 (Fed. Cir. 2013). *Koehn v. Sec'y of Health & Hum. Servs.*, No. 11-355V, 2013 WL 3214877 (Fed. Cl. Spec. Mstr. May 30, 2013), *mot. for review den'd* (Fed. Cl. Dec. 3, 2013), *aff'd*, 773 F.3d 1239 (Fed. Cir. 2014).

## B.  Law Governing Analysis of Fact Evidence

The process for making factual determinations in Vaccine Program cases begins with analyzing the medical records, which are required to be filed with the petition. Section 11(c)(2). The special master is required to consider "all [] relevant medical and scientific evidence contained in the record," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death," as well as the "results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." Section 13(b)(1)(A). The special master is then required to weigh the evidence presented, including contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 413, 417 (Fed. Cir. 1993) (it is within the special master's discretion to determine whether to afford greater weight to contemporaneous medical records than to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is evidenced by a rational determination).

Medical records created contemporaneously with the events they describe are generally trustworthy because they "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions," where "accuracy has an extra premium." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378 (Fed. Cir. 2021) (citing *Cucuras*, 993 F.2d at 1528). This presumption is based on the linked proposition that (i) sick people visit medical professionals; (ii) sick people honestly report their health problems to those professionals; and (iii) medical professionals record what they are told or observe when examining their patients in as accurate a manner as possible, so that they are aware of enough relevant facts to make appropriate treatment decisions. *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2013 WL 1880825 at *2 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) *mot. for rev. denied*, 142 Fed. Cl. 247, 251-52 (2019), *vacated on other grounds and remanded*, 809 Fed. Appx. 843 (Fed. Cir. Apr. 7, 2020).

Accordingly, if the medical records are clear, consistent, and complete, then they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475 at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). Indeed, contemporaneous medical records are generally found to be deserving of greater evidentiary weight than oral testimony -- especially where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Hum. Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992), *cert. den'd*, *Murphy v. Sullivan*, 506 U.S. 974 (1992) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1947) ("[i]t has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight.")).

However, there are situations in which compelling oral testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Hum. Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475 at *19 ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733)). Ultimately, a determination regarding a witness's credibility is needed when determining the weight that such testimony should be afforded. *Andreu*, 569 F.3d at 1379; *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

When witness testimony is offered to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent and compelling." *Sanchez*, 2013 WL 1880825 at *3 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808V, 1998 WL 408611 at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *LaLonde v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). In making a determination regarding whether to afford greater weight to contemporaneous medical records

or other evidence, such as testimony at hearing, there must be evidence that this decision was the result of a rational determination. *Burns*, 3 F.3d at 417.

## V.   Analysis

### A.  Petitioner's Vaccination Records

The issues with this case as identified in the Order to Show Cause still remain. First, Petitioner has not specified a vaccination or vaccinations that have injured her. The Petition lists an influenza vaccine along with four TB tests. Pet. at 1. During our status conference on November 29, 2022, Petitioner stated her childhood MMR and varicella vaccines were causal. Scheduling Order dated 11/29/2022. In her status report, filed on April 14, 2023, Petitioner listed the following vaccines: Varicella, Tdap/TD, Zoster, Influenza, Hepatitis B, and COVID-19, presumably suggesting these vaccines were causal. ECF No. 19. Based on the above, I have considered all the vaccines contained on the I-CARE documents as well as Petitioner's TB tests in assessing her claim.

Petitioner has submitted her I-CARE records as proof of vaccination. As I noted in the Order to Show Cause, it appears that Petitioner's first I-CARE record has been altered. ECF No. 33 at 3-4. Under "Shot History Details", the sites of vaccination were added on top of "--" and are a different font from the rest of the document. The document is reproduced below.

CAPRI, MARY - 12/6/1967

**Illinois Department of Public Health**
**Patient Immunization History Report**

Report Date: 1/4/2023 12:38 PM


Illinois Comprehensive Automated
Immunization Registry Exchange

Name:  CAPRI, MARY
Address:  508 LUNT AVE APT 216, SCHAUMBURG, IL 60193-4408
Phone:  312-866-3893
Sex:  Female
Birth Date:  12/6/1967

## VALID SHOTS

| Group | Shot Date | Shot Date | Shot Date | Shot Date | Shot Date | Shot Date | Shot Date |
|-------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| Tdap | 10/01/2015 | | | | | | |

| SHOTS OVERDUE | | SHOTS DUE LATER | |
|---------------|--|-----------------|--|
| **Forecast Date** | **Vaccine Group** | **Forecast Date** | **Vaccine Group** |
| 12/06/1968 | Measles, Mumps, Rubella | | |
| 12/06/1968 | Varicella | | |
| 10/29/2015 | Td | | |
| 12/06/2017 | Zoster | | |
| 09/01/2022 | Influenza | | |
| 01/04/2023 | Hepatitis B | | |
| 01/04/2023 | COVID-19 | | |

No Invalid shots

No Additional Information

## SHOT HISTORY DETAILS

| Group | # | Vaccine | Date | Status | Site | Mnf | Lot | Exp Date |
|-------|---|---------|------|--------|------|-----|-----|----------|
| HBV | 1 | -- | 01/04/2023 | FRC | Rush Hospital Aurora | -- | -- | -- |
| FLU | 1 | -- | 09/01/2022 | FRC | Northwestern Arlington Heights 1L | -- | -- | -- |
| MMR | 1 | -- | 12/06/1968 | FRC | Altgeld Elementary School | -- | -- | -- |
| Tdap | 1 | Tdap | 10/01/2015 | OK | CENTRAL DUPAGE HOSPITAL(CDPG CHARLESTOWNE INTERNAL MEDICINE) | UNK | -- | -- |
| Td | 1 | -- | 10/29/2015 | FRC | Gentral Dupage Hospital Internal Medicine | -- | -- | -- |

CAPRI, MARY - 12/6/1967

## SHOT HISTORY DETAILS

| Group | # | Vaccine | Date | Status | Site | Mnf | Lot | Exp Date |
|-------|---|---------|------|--------|------|-----|-----|----------|
| VAR | 1 | -- | 12/06/1968 | FRC | Altgeld Elementary School | -- | -- | -- |
| ZOS | 1 | -- | 12/06/2017 | FRC | Advocate Health Aurora | -- | -- | -- |
| COVID-19 | 1 | -- | 01/04/2023 | FRC | Rush Copley Aurora | -- | -- | -- |

ECF No. 15.

17

Court Exhibit 1001, Petitioner's updated I-CARE Record, with a report date of December 12, 2023, looks slightly different.



18

Court Exhibit 1001. There is no site added on top of "--" lines. Additionally, the language "FRC – Forecasted OK – Valid and BAD – Invalid" has not been removed. Given the differences between these two documents, the veracity and information I can ascertain from both is minimal.

Even if I were to overlook the unreliability of these documents, Petitioner's only vaccination listed as "valid" is her 10/1/2015 Tdap vaccination at Central DuPage Hospital. Petitioner argues that the I-CARE document demonstrates that she received each vaccine, stating that "There was zero adding in immunizations, the immunization dates were already there from providers… why did the providers give the actual "dates" next to each "--" when the vaccinations were administered?" Court Exhibit 1002 at 2 (modified for clarity and formatting). Consistent with the first I-CARE record are the "Shots Due" section, which confirms that all other vaccinations, except the 10/1/2015 Tdap vaccine, have the status "FRC" or "Forecasted."[7] This indicates that Petitioner has not received the vaccinations listed in the "Shots Due" section, or the state of Illinois has not documented Petitioner's receipt of these vaccinations. Further, the fact that there is a location listed where Petitioner received her Tdap vaccine and not for any other vaccine supports the fact that she received this vaccine and did not receive the others. Petitioner has failed to file any other vaccination records to corroborate her claim.[8]

I additionally note that Petitioner's I-CARE document indicates that she had a "forecast date" for the varicella vaccine that is listed as 12/06/1968. Court Exhibit 1001 at 1. However, the varicella vaccine was not licensed for use in the United States until 1995.[9] Thus Petitioner cannot have received a varicella vaccine in 1968; this further casts doubt on the reliability of the document in its entirety.

Proof of vaccination is a fundamental threshold issue in all Vaccine Program cases. Absent evidence that a covered vaccine was administered, a petitioner does not have a basis to proceed

---

[7] I take into account the plain meaning of the word "forecast" or "forecasted," which Merriam-Webster defines as "to calculate or predict (some future event or condition) usually as a result of study and analysis of available pertinent date; to indicate as likely to occur; to serve as a forecast of." Merriam-Webster, *Forecast, or forecasted*, https://www.merriam-webster.com/dictionary/forecasted (last accessed January 3, 2024).

[8] Petitioner filed a document entitled "Vaccination Records Explanation" (now Court Exhibit 1002), Petitioner uses the Washington State Department of Health's Immunization Information System Quick Reference Guide (hereinafter "Washington Quick Reference Guide"), to attempt to explain her Illinois I-CARE record. I decline to apply a guide from one state to explain an immunization information system in a different state. Even so, the Washington Quick Reference Guide states "Forecast: The forecast displays which vaccines a patient may need to be up-to date according to the ACIP recommended immunization schedule. The forecast lists the vaccine name, dose number, recommended date, minimum valid date, overdue date, and the patient's status for each vaccine." Court Exhibit 1002 at 1.

[9] CDC.gov handout on varicella; www.cdc.gov/vaccines/pubs/pinkbook/downloads/varicella.pdf at 329 (last visited Feb. 7, 2024) (noting that "Varicella vaccine was licensed for general use in Japan and Korea in 1988, and in the United States in 1995 for persons age 12 months or older. In 2005, a combination measles, mumps, rubella, and varicella (MMRV) vaccine was licensed in the United States for persons age 12 months through 12 years.").

with her claim. *See, e.g.*, *Rich v. Sec'y of Health & Hum. Servs.*, No. 12-742V, 2013 WL 4476751 (Fed. Cl. Spec. Mstr. July 26, 2013); § 11(c)(1) (describing necessary contents for a petition, which include establishing proof of vaccination). Vaccine Rule 2 states, in accordance with 42 U.S.C § 300aa-11(c), that a petition shall be accompanied by "all available medical records supporting the allegations in the petition, including physician and hospital records relating to: the vaccination itself." Vaccine Rule 2(c)(2)(A)(i).

The evidence submitted in this case preponderantly establishes that Petitioner received a Tdap vaccine on October 1, 2015. For the reasons discussed above, the evidence does not preponderantly establish receipt of the other claimed vaccines.[10] Although I find there is not preponderant evidence that Petitioner received vaccines other than Tdap, I have analyzed issues regarding these vaccines below.

## A. TB Tests or Vaccinations, COVID Vaccination, and Zoster Vaccination

Congress has restricted compensation in the Vaccine Program to only those individuals who "received a vaccine set forth in the Vaccine Injury Table." 42 U.S.C. § 300aa-11(c)(1)(a). While a tuberculosis vaccine exists (the BCG (Bacillus Calmette-Guerin) vaccine),[11] this vaccine is not listed on the Vaccine Injury Table, and thus is not a covered vaccine. Further, TB tests are not vaccines, and are likewise not covered in the Program.

Similarly, neither the COVID vaccine nor the Zoster[12] vaccine are covered vaccines. Accordingly, Petitioner does not have a viable claim involving a TB vaccine or test, a COVID vaccine, or a Zoster (shingles) vaccine.

---

[10] I do not dispute that Petitioner likely received her childhood MMR vaccine, as she submitted evidence that she has MMR antibodies. *See* ECF Nos. 1-4, 1-5, 1-6, 1-7. As Petitioner admits, she was required to undergo testing for immunity as a part of her job application process for the Naperville Hospital. ECF No. 35 at 20. I note that the date listed on the I-CARE form under "shots due" and "shot history details" is her first birthday; the form lists this same date for the varicella vaccine, which she could not have received as it did not exist. Further, Petitioner's Zoster vaccine is listed as due on 12/06/2017, Petitioner's 50th birthday. (The CDC recommends that adults receive the shingles vaccine starting at age 50. www.cdc.gov/shingles/vaccination.html). While it appears this information may have been auto-populated by the I-CARE system, there is no way to verify this point.

[11] BCG vaccine: "a vaccine made from the Calmette-Guérin strain of *Mycobacterium bovis,* which was made avirulent by culture by Calmette and Guérin for many years on a medium enriched in beef bile; it is administered by scarification or intradermal or intracutaneous injection to tuberculin-negative individuals for prevention of tuberculosis. It is used for routine vaccination of children only in regions where there is a high incidence of tuberculosis. In the United States it is recommended only for immunization of high-risk individuals. BCG vaccine is also administered intravesically in the treatment of carcinoma of the bladder." Dorland's Online Medical Dictionary, *BCG Vaccine*, https://www.dorlandonline.com/dorland/definition?id=116498 (last accessed on Jan. 3, 2024).

[12] Although Petitioner contends in her Motion for Interlocutory Review that the Zoster vaccine is the same as the varicella vaccine, this is not accurate. *See Scanlon v. Sec'y of Health & Hum. Servs.*, 114 Fed. Cl. 135 (2013) (shingles vaccine is not the same as chicken pox vaccine). Dorland's provides the following definitions: Zoster: "herpes zoster". Herpes zoster: "an acute, infectious, usually self-limited disease believed to represent activation of latent human herpesvirus 3 in those who have become partially immune

### B. Tdap, Td, and Childhood Vaccinations (MMR, Varicella)

Petitioner's two I-CARE records show the 10/1/2015 Tdap vaccination as her only "valid shot." *See* ECF No. 15 at 1; Court Ex. 1001 at 1. Petitioner filed her petition more than seven years after she received this vaccination.

Section 16(a)(1) of the Vaccine Act, which governs claims resulting from vaccines administered before October 1, 1988, states,

> if a vaccine-related injury or death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury or death after the expiration of 28 months after October 1, 1988, and no such petition may be filed if the first symptom or manifestation of onset or of the significant aggravation of such injury occurred more than 36 months after the date of administration of the vaccine.

§ 16(a)(1). Thus, for claims resulting from vaccines administered before October 1, 1988, a petition must be filed within 28 months after October 1, 1988 (i.e., before February 1, 1991) and the first symptom or manifestation of onset must have been within 36 months of vaccination.

Section 16(a)(2) of the Vaccine Act governs claims resulting from vaccines administered after October 1, 1988, and reads:

> [I]f a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury *after the expiration of 36 months* after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

*Id.* § 300aa-16(a)(2) (emphasis added). The statute begins to run from the manifestation of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis. *Carson v. Sec'y of Health & Hum. Servs.,* 727 F.3d 1365, 1369 (Fed. Cir. 2013).

Because Petitioner has not filed any medical records that correspond to these vaccines, it is unclear what, if anything, constitutes her "first symptom or manifestation of onset." Regardless, seven years (or longer in the case of her childhood vaccinations) is too long a period of time to ascribe causation to the vaccine. *See Althen*, 418 F.3d at 1281 (requiring a petitioner to establish a "proximate temporal relationship" between the vaccination and the injury alleged).

### C. Influenza and Hep B Vaccinations

---

after an attack of chickenpox." DORLAND'S, www.dorlandsonline.com/dorland/definition?id=80827 (last visited Feb. 6, 2024). This point is reinforced by the fact that Petitioner's I-CARE printouts have separate entries for zoster and varicella vaccines. Additionally, because Petitioner's I-CARE printout documents that she was overdue for her zoster vaccine on December 6, 2017, even assuming she received the vaccine on this date, her petition was filed outside of the 36 month statute of limitations.

Petitioner's September 1, 2022 influenza vaccine and her January 4, 2023 Hepatitis B vaccine claims[13] are not time barred. Petitioner is required to file medical records pursuant to the Vaccine Act (42 U.S.C. § 300aa–11(c)(2)), and has been given numerous opportunities to do so. However, Petitioner has not filed medical records which indicate that she suffered a vaccine injury.

Petitioner filed a March 17, 2015 live vaccine exemption[14] as well as a March 24, 2015 note that she cannot receive the flu vaccine because she develops a severe reaction. However, neither record documents that she experienced a reaction after receipt of a specific vaccine. Certainly, neither document relates to the flu vaccine or the Hep B vaccine, that she claims to have received on September 1, 2022 or January 4, 2023 and/or December 12, 2023, respectively.

Similarly, the letter from Nurse Roxas indicates that Petitioner has been advised not to receive the flu, Td, Tdap, shingles, Hep B, COVID-19, MMR, or varicella vaccines. Court Exhibit 1003. This letter does not describe a specific vaccine reaction.

In short, Petitioner has failed to provide relevant medical records in support of a vaccine injury relating to the flu or Hep B vaccines (or any other vaccine). As such, she has not satisfied her burden under *Althen versus Secretary of Health and Human Services* with respect to any of the three prongs.

## VI.   Conclusion

To receive compensation in the Vaccine Program, a petitioner must prove either (1) that she suffered a "Table Injury" – i.e., an injury falling within the Vaccine Injury Table – corresponding to her vaccination, or (2) that she suffered an injury that was actually caused by a vaccine. *See* §§ 13(a)(1)(A) and 11(c)(1). Moreover, under the Vaccine Act, a petitioner may not receive a Vaccine Program award based solely on her claims alone. Rather, the petition must be supported by either medical records or by the opinion of a competent medical expert. § 13(a)(1). In this case, however, there is insufficient evidence in the record for Petitioner to meet her burden of proof. Petitioner's claim therefore cannot succeed and must be dismissed.

Vaccine Rule 21(b)(1) provides that a "special master or the court may dismiss a petition or any claim therein for failure of the petitioner to prosecute or comply with these rules or any order of the special master or the court." It is Petitioner's obligation to follow court orders. Failure to follow court orders, as well as failure to file status reports or other required documents, can result in dismissal of Petitioner's claim. *Tsekouras v. Sec'y of Health & Hum. Servs.*, 26 Cl. Ct. 439 (1992), 991 F.2d 810 (Fed. Cir. 1993) *aff'd per curiam without opin.; Sapharas v. Sec'y of*

---

[13] I note that the I-CARE documents indicate that Petitioner was due for the Hepatitis B vaccine on January 4, 2023, or December 12, 2023. See ECF No. 15 versus Court Exhibit 1001. Either date is after her Petition was filed on November 15, 2022 and both dates are on the date that each form was printed (the report date).

[14] Neither the Hep B nor the flu vaccine are live vaccines. U.S. Department of Health and Human Services, *Vaccine Types*, https://www.hhs.gov/immunization/basics/types/index.html (last accessed February 7, 2024).

*Health & Hum. Servs.*, 35 Fed. Cl. 503 (1996); Vaccine Rule 21(b). Petitioner has repeatedly failed to provide medical record evidence demonstrating that she was harmed by a vaccine.

As such, **IT IS ORDERED THAT**,

The petition is hereby **DISMISSED** for failure to follow court orders and failure to prosecute. The Clerk's Office is instructed to issue judgment in accord with this decision unless a motion for review is filed. Information about filing a motion for review, including the deadline, is found within the Vaccine Rules, which are available on the website for the Court of Federal Claims.[15]

A copy of this Decision shall be sent to Petitioner via email to zxroxxfx.llc@yahoo.com and by U.S. mail at the following address:

Mary Capri
655 Deerfield Road
Suite 100
Deerfield, IL 60015

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.